Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 3463 | **DATE** | 8/15/2003 |
| **CASE TITLE** | Local 15, International, et al. vs. Midwest Generation EME, LLC | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted. Accordingly, judgment is entered in favor of defendant and against plaintiff. Any pending motion in this case is terminated as moot. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 number of notices | |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | AUG 1 8 2003 date docketed | 34 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | 8/15/2003 | |
| | | 03 AUG 15 PM 6:54 | date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LOCAL 15, INTERNATIONAL BROTHERHOOD )
OF ELECTRICAL WORKERS, )
 )
 )
Plaintiff, )
 )
v. ) No. 02 C 3463
 )
MIDWEST GENERATION EME, LLC, )
 )
Defendant. )
 )

DOCKETED
AUG 1 8 2003

MEMORANDUM OPINION AND ORDER

Defendant Midwest Generation EME, LLC ("Midwest") generates electricity to sell wholesale on the open market. Plaintiff Local 15, International Brotherhood of Electrical Workers ("Local 15") represents employees of Midwest. In July 2001, Midwest terminated five employees. Local 15 filed in this court a complaint to compel arbitration of grievances related to the terminations. Before me now are cross-motions for summary judgment. I deny plaintiff's motion for summary judgment and grant defendant's motion.

I.

The relevant facts in this case are not in dispute. In December 1999, Midwest and Local 15 entered into a collective bargaining agreement ("CBA-1") to run from December 15, 1999 to March 31, 2001. In January 2001, Local 15 notified Midwest that it intended to terminate CBA-1 on March 31, 2001 and sought negotiations on a new collective bargaining agreement. Midwest refused to enter into negotiations, claiming that state law would

keep CBA-1 in effect until June 2002.[1] Local 15 sought relief from the National Labor Relations Board ("NLRB"), which issued a complaint against Midwest charging it with unlawful refusal to bargain. In June 2001, Midwest and Local 15 entered into a settlement agreement, approved by the NLRB, agreeing to commence negotiations for a new collective bargaining agreement. During these negotiations, Midwest and Local 15 articulated very different positions. On June 28, 2001, Local 15 commenced a strike against Midwest. On August 31, 2001 Local 15 ended the strike and offered to return to work. Midwest, however, initiated a lockout of employees beginning on September 6, 2001. Midwest and Local 15 ultimately reached an agreement and entered into a new collective bargaining agreement ("CBA-2") to run from October 22, 2001 to December 31, 2005. Employees represented by Local 15 returned to work on October 22, 2001.

In July 2001, while the strike was occurring, Midwest discharged five employees for alleged picket line misconduct. Grievances were filed on behalf of these employees, protesting the terminations. Local 15 alleges that Midwest is obligated to arbitrate these grievances and filed this complaint to compel

---

[1] As part of its deregulation of the electricity market, Illinois required that terms and conditions of employment at electric utilities remain substantially the same for a 30-month period following a transfer of ownership, unless otherwise mutually agreed by the parties. 220 ILCS 5/16-128. Midwest acquired the facilities at issue here from Commonwealth Edison in December 1999.

arbitration.

II.

Arbitration is a matter of consent, and thus "[t]he law compels a party to submit his grievance to arbitration only if he has contracted to do so." *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 200-01 (1991). Both CBA-1 and CBA-2 contained arbitration clauses. However, the terminations forming the basis of the grievances occurred during the period from March 31 to October 22, 2001 when neither collective bargaining agreement was in effect. Local 15 argues that there was an implied-in-fact contract between it and Midwest, and that this implied-in-fact contract calls for arbitration of the grievances at issue.

The Seventh Circuit has endorsed the notion of implied-in-fact collective bargaining agreements. *McNealy v. Caterpillar, Inc.*, 139 F.3d 1113, 1121 (7th Cir. 1998). The crucial inquiry is "whether the two sides have reached an 'agreement,' even though that 'agreement' might fall short of the technical requirements of an accepted contract." *Id.* Essentially, this requires words or actions that can be characterized as offer and acceptance. *See id.* at 1121-23 (characterizing an employer's unilateral implementation of new employment terms as an offer, and the union's termination of a strike and the employees' return to work as an acceptance, resulting in an implied-in-fact interim collective bargaining agreement). *See also United Paperworkers Int'l Union v. Champion*

*Int'l Corp.*, 81 F.3d 798, 803 (8th Cir. 1996) ("[W]e conclude that proof of an interim agreement requires not only evidence of the employer's intent to make an offer, but also evidence of the union's intent to accept that offer."). Here, even if Midwest can be considered to have made an offer for an interim agreement that contained an arbitration agreement, the fact that Local 15 chose to strike shows that there was no acceptance of the offer, and therefore no interim agreement. *See Int'l Union, United Mine Workers of Am. v. Big Horn Coal Co.*, 916 F.2d 1499, 1501-02 (10th Cir. 1990) In *Big Horn Coal*, an employer and a union were unable to reach a new agreement following expiration of an old collective bargaining agreement. After a strike, the employer refused to reinstate eighteen striking employees, alleging that they had engaged in serious strike-related misconduct. The union filed grievances on behalf of the terminated employees, which the employer refused to submit to arbitration. On a motion to compel arbitration, the district court found that the employer's implementation of the employment terms of its last offer and the employees' continuation to work constituted objective manifestations of the parties' assent to an interim contract (that contained an arbitration provision). The Tenth Circuit reversed, holding that "[e]mployee conduct after [the employer's implementation of its last offer] did not evince an acceptance of the Company's last offer. To the contrary, the commencement of a

seven-month strike ... during which the alleged misconduct occurred, shows continued dissatisfaction with and rejection of the employer's offer." *Cf. United Paperworkers Int'l Union v. Int'l Paper Co.*, 920 F.2d 852, 857-58 (11th Cir. 1991) (holding that a union's failure to call a strike and the employees' continuation to work constituted acceptance of the employer's offer of interim employment following expiration of a collective bargaining agreement). Thus, even assuming that Midwest made some kind of offer for an interim agreement, Local 15, by striking, failed to accept that offer. At the time the grievances arose, there was no collective bargaining agreement in place, there was no implied-in-fact contract in existence, and therefore, there was no agreement to arbitrate those grievances.

Local 15 cites *Local 74, Service Employees International Union v. Ecclesiastical Maintenance Services, Inc.*, 55 F.3d 105 (2d Cir. 1995), in which the Second Circuit found a factual dispute sufficient to preclude summary judgment in a case where a union sought to compel arbitration of a grievance arising out of a termination that occurred following expiration of a collective bargaining agreement. In *Ecclesiastical Maintenance Services*, although the union ultimately called a strike, the court found sufficient evidence of an interim agreement to defeat the employer's motion for summary judgment on the union's complaint to compel arbitration. In that case, the union had claimed that prior

5

to the expiration of the collective bargaining agreement, an oral agreement had been reached to extend its terms. The union submitted evidence supporting the existence of such an oral agreement. The court found that while the fact that the union expressly reserved its right to strike and ultimately did strike may be evidence that there was no oral agreement (because a strike may have violated the terms of such an agreement), this evidence simply contributed to the factual dispute over whether there had been an agreement to extend the collective bargaining agreement. *Id.* at 109. It is important to note that the strike in *Ecclesiastical Maintenance Services* occurred after the termination that was the subject of the dispute, which itself occurred after the alleged oral agreement to extend the collective bargaining agreement.

Here, in contrast, the strike occurred prior to the terminations forming the basis of the grievances. Local 15 does not allege the existence of an express oral agreement to extend CBA-1. Instead, it proceeds on the theory that there was an implied-in-fact contract. As discussed above, however, the existence of such a contract requires evidence of offer and acceptance. Even if Midwest can be seen as having offered to extend the terms of CBA-1, Local 15 presents no evidence of acceptance of this offer prior to the dates on which the grievances arose. To the contrary, the undisputed fact that Local 15 called

a strike prior to the terminations indicates rejection of any supposed offer by Midwest. Thus, unlike *Ecclesiastical Maintenance Services*, there is no evidence here that there existed an agreement (either express or implied-in-fact) containing an arbitration clause at the time of the disputed terminations.

III. Conclusion

As arbitration is a matter of contract and the undisputed evidence shows that there was no arbitration agreement in place at the time the union's grievances arose, I will not compel arbitration here. Plaintiff's motion for summary judgment is DENIED, and defendant's motion for summary judgment is GRANTED.

ENTER ORDER:

*Elaine E. Bucklo*
**Elaine E. Bucklo**
United States District Judge

Dated: August 15, 2003